IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Case No. 03-MK-1902 (BNB)

DAVID MICHAEL ROME,

    Plaintiff,

v.

OFFICER RODNEY ROMERO,
OFFICER DAN FELKINS,
OFFICER JAY WHITTENBURG, and
THE CITY AND COUNTY OF DENVER,

    Defendants.
_____

**OPINION AND ORDER GRANTING, IN PART, MOTION FOR SUMMARY JUDGMENT**
_____

**THIS MATTER** comes before the Court pursuant to the Defendants' Motion to Amend **(# 97, supplemented # 120)** this Court's Order Granting, In Part, Motion for Summary Judgment **(# 92)**, the Plaintiff's response **(# 99, supplemented # 126, 129)**, and the Defendants' reply **(# 104)**; the Plaintiff's Motion to Alter Judgment **(# 100)**, the Defendants' response **(# 106)**, and the Plaintiff's reply **(# 108)**; the Defendants' Motion to Strike **(# 105)** the Plaintiff's Motion to Alter Judgment, and the Plaintiff's response **(# 107)**; the Plaintiff's Motion to Supplement **(# 145)** his Motion to Alter Judgment; the Plaintiff's Motion for Summary Judgment **(# 147)[1]**, the

---

[1]In addition to filing this Motion, the Plaintiff also filed a Motion to Accept the Motion for Summary Judgment **( #149)**, and did the same **(# 155)** with a subsequent Motion for Summary Judgment **(# 154)**.  The Court treats both of these "Motions to Accept" as Notices of Motion, and thus, does not separately rule on them.  The Defendants did not file responses to the

1

Defendants' response **(# 153)**, and the Plaintiff's reply **(# 158)**; the Plaintiff's Motion for Summary Judgment **(# 154)**, and the Defendants' response **(# 156)**; and the Plaintiff's Motion for Extension of Trial Time **(# 177)**.

## **BACKGROUND**

The Court has previously discussed the facts in this case in its prior Order of March 31, 2005 **(# 92)**, and that discussion is deemed incorporated herein.

The parties have sharply differing versions of the events at issue here. In summary, on June 22, 2003, Defendants Romero and Felkins (hereafter Romero and Felkins, individually, or collectively as the Defendants) responded to a police dispatch call that a suspect had attempted to engage in check fraud. Upon arriving at the scene, they received some information from witnesses describing the suspect. At that point, Felkins observed Rome, the Plaintiff (hereafter Rome), attempting to drive out of a nearby parking lot nearby, and believed Rome to be the suspect the witnesses had described. Felkins approached Rome's vehicle and instructed him to stop the car and get out, but Rome did not do so. (Rome appears to contend that he did not hear Felkins at this time.) Instead, Rome continued to attempt to drive his car out of the parking lot. At this time, Romero approached the scene in a police cruiser. While attempting to leave the lot, Rome struck a concrete post with his car. (Rome claims Romero rammed his car into the pole; Romero claims Rome drove into the pole, and that Romero merely used the cruiser to block Rome from backing up.) At this point, Romero and Felkins stood on either side of Rome's car

---

substantive Motions for Summary Judgment by the Plaintiff, but did file responses to these Motions to Accept, in which they substantively responded to the underlying Motions for Summary Judgment. Although improperly captioned, the Court treats these responses as responses to the substantive motions.

with their weapons drawn, and instructed Rome to exit the vehicle. Rome refused to do so, and attempted to maneuver the car to effect his escape. (It is not clear from the record whether Rome denies continuing to attempt to move the car, although he contends that the car was wedged between the post and Romero's cruiser, and presumably, was immobilized.) Romero repeatedly instructed Rome to stop and get out of the car, (Rome appears to contend that no such warnings were issued), and eventually kicked in Rome's driver's-side window, purportedly to take the keys out of the ignition. At that point, Rome agreed to exit the vehicle through the passenger door. Upon exiting the vehicle, a scuffle broke out between Rome and Felkins, and Rome fled the scene. A chase and extended physical altercation ensued between Rome, the Defendants, and a bystander before Rome's arrest was ultimately effectuated.

As a result of the altercation, Rome was charged with two counts of Second Degree Assault and one count of Third Degree Assault. At trial, additional counts of Resisting Arrest and were asserted against Rome. A jury found Rome guilty on all counts. On February 3, 2005, the trial court (hereafter the criminal court) entered a Judgment of Conviction on the assault counts, but inexplicably did not include the resisting arrest charges in the judgment.

Rome commenced this action, *pro se,* pursuant to 42 U.S.C. § 1983, alleging claims against Felkins, Romero, and Defendant Whittenberg (hereafter Whittenberg) for false arrest and excessive force in violation of his Fourth Amendment rights, claims for common-law assault, and a *Monell* claim against Defendants Denver Police Department and City and County of Denver (hereafter City and County of Denver or Denver Police Department). All of the Defendants moved for summary judgment on all claims, arguing, among other things, that Rome's criminal convictions collaterally estopped him from asserting the claims in this case. In its March 31, 2005

3

Order, this Court agreed in part, finding, among other things, that Rome was collaterally estopped from asserting false arrest claims, but rejecting the Defendants' collateral estoppel argument with regard to the excessive force claim, noting that the record did not adequately demonstrate that the issue of excessive force had been decided, actually and finally, in the criminal case. As a result of the Court's March 31, 2005 Order, the following claims remain in this action: (i) use of excessive force, in violation of 42 U.S.C. § 1983, against Romero and Felkins; (ii) a claim, essentially sounding in excessive force under § 1983, against Whittenberg, insofar as he allegedly witnessed Romero and Felkins using excessive force against Rome and failed to intervene; and (iii) a *Monell* claim against the City and County of Denver for failure to properly train and supervise the Defendant police officers.

The Defendants then filed the instant "Motion to Amend" **(# 97)** the Court's March 31, 2005 Order pursuant to Fed. R. Civ. P. 59(e). They acknowledge that their original Motion for Summary Judgment was filed before Rome was sentenced in the criminal case, and that the criminal court's apparently inadvertent failure to adjudge Rome guilty of the Resisting Arrest charges was unanticipated. As a result, they filed the instant motion, attaching the entire transcript of Rome's criminal trial, and renewed numerous arguments from their original summary judgment motion. Specifically, they contend: (i) there is no evidence in the record to support a claim of excessive force (or, more accurately, failure to intercede to prevent the use of excessive force) against Whittenberg; (ii) that Rome's excessive force claims are barred by *Heck v. Humphrey*, 512 U.S. 477, 486 (1994); and (iii) that Rome's criminal convictions collaterally estop his excessive force claims.

4

Rome then filed his own Motion to Amend Judgment **(# 100)**,[2] contending that the criminal court found that the Felkins and Romero only had reason to conduct an investigatory stop of Rome when they first encountered him, and that probable cause to arrest him only arose after Rome had exited his car and swung at Felkins. Rome contends that, prior to that moment, Romero rammed his car with the police cruiser, kicked in his car window, and drew weapons on him, all constituting an arrest without probable cause. As a result, he contends that this Court erred in giving collateral estoppel effect to the criminal court's finding that probable cause existed for Rome's arrest.[3]

On August 2, 2005, the Defendants moved to supplement their pending Motion to Alter Order, attaching a copy of an Amended Judgment of Conviction, which verifies that Rome was convicted of, among other things, two counts of Resisting Arrest in violation of C.R.S. § 18-8-103, and two counts of Assault on a Peace Officer in violation of C.R.S. § 18-3-203(1)©. The Court granted the motion to supplement, deeming the Amended Judgment of Conviction to be submitted in support of the Motion to Alter Order. The Court permitted Rome to file a supplement to his response to the Motion to Alter Order, and he did so, asserting that the Amended Judgment of Conviction is void for various reasons.

---

[2]The Defendants moved to strike **(# 105)** this motion, alleging that Rome had not served a copy of it upon them. In the alternative to striking, the Defendants requested leave to respond to Rome's Motion to Amend Judgment. Because the Defendants subsequently filed a response to the Motion to Amend Judgment, the Court denies the Motion to Strike as moot.

[3]Rome later moved to supplement **(# 145)** this motion with what he refers to as "the actual court order" memorializing the criminal court's finding as to when probable cause existed to arrest him. In actuality, the tendered document is a post-trial ruling on Rome's motion for a new trial, and effectively recites findings the criminal court made in its oral ruling on the probable cause issue prior to trial. Nevertheless, the Court will grant the motion to supplement and deem Rome's tendered document to supplement his Motion to Alter Judgment.

5

On September 29, 2005, Rome filed a Motion for Summary Judgment on the false arrest claim that, in many ways, is duplicative of the arguments raised in his Motion to Alter Judgment. On October 12, 2005, Rome filed another Motion for Summary Judgment, this time on his excessive force claim, particularly with regard to the amount of force used in the initial confrontation with Rome.

Finally, Rome has recently filed a motion requesting that the time allotted for trial in this matter be extended from 3 days to 10 days.

## JURISDICTION

The Court has jurisdiction over Rome's § 1983 claims pursuant to 28 U.S.C. § 1331.

## ANALYSIS

### A. Standard of review

At all times, the Court is cognizant of the fact that Rome is proceeding *pro se*. A *pro se* plaintiff is entitled to liberal construction of his pleadings. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir.1991). In other words, if the Court if can reasonably read the pleadings to state a valid claim on which Rome could prevail, it should do so despite Rome's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements. *Hall,* 935 F.2d at 1110. However, the requirement that the Court read Rome's pleadings broadly does not relieve Rome of the burden of alleging sufficient facts on which a recognized legal claim could be based. *Id*.

A motion under Fed. R. Civ. P. 59(e) or 60(b) to alter or amend a judgment or order is, in essence, a motion for reconsideration. Reconsideration is an appropriate means to review newly-

discovered evidence, to correct clear error, or prevent manifest injustice. *Major v. Benton*, 647 F.2d 110, 112 (10th Cir.1981). Relief under these Rule 59(e) or 60(b) is reserved for extraordinary circumstances, such as where the Court has obviously misapprehended a party's position on the facts or the law, or the Court has mistakenly decided issues outside of those the parties presented for determination. *See e.g. Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000); *Adams v. Reliance Standard Life Ins. Co.*, 225 F.3d 1179, 1186 n. 5 (10th Cir. 2000); *Sithon Maritime Co. v. Holiday Mansion,* 177 F.R.D. 504, 505 (D.Kan.1998). However, the rules are not tools to re-raise issues that were or could have been raised in prior briefing. *Van Skiver v. United States*, 952 F.2d 1241, 1243 (10th Cir.1991).

**B. Defendants' motion for reconsideration**

In many respects, the Defendants motion for reconsideration is nothing more than an attempt to re-raise arguments that this Court previously considered and rejected based on insufficiency of the supporting evidence. As the Court's March 31, 2005 Order notes, the Defendants' initial summary judgment motion did not include portions of the trial transcript (*see Docket* # 92 at 8) or charging documents (*see Docket* # 92 at 9) which were necessary to support the collateral estoppel arguments being asserted. Although the Defendants attempt to cure this oversight by attaching the entire trial transcript to the motion for reconsideration, the trial transcript is not "newly discovered evidence" because it could not have been submitted initially. Were the motion based solely on this ground, the Court would likely deny it.

However, the Defendants have also identified a key item of evidence that was not available at the time of their initial summary judgment motion – the Amended Judgment of Conviction. Clearly, the motion for summary judgment was made in anticipation that the Judgment of

Conviction would reflect Rome's conviction on all of the counts, and the subsequent entry of a Judgment that omitted the resisting arrest counts was certainly unexpected.[4]  The Amended Judgment of Conviction, which cures these errors, is indeed new evidence that warrants reconsideration.  The Court therefore revisits its prior rulings in light of the newly-produced Amended Judgment of Conviction.

### 1. Collateral estoppel effect of Plaintiff's convictions

The Defendants reassert their argument that Rome's conviction on Resisting Arrest and Assault on a Peace Officer bars Plaintiff's excessive force claim pursuant to the doctrine of collateral estoppel.  They contend that an essential element of the crimes of which Rome was convicted was a determination that the arrest was lawful and that no excessive force was used.

As stated in the March 31, 2005 Order, under Colorado law, preclusive effect is given to a final factual or legal determination where four criteria are met: (i) the issue precluded is identical to an issue actually determined in the prior proceeding, (ii) the party against whom estoppel is asserted was a party in the prior proceeding, (iii) there is a final judgment on the merits in the prior proceeding, and (iv) the party against whom estoppel is asserted had a full and fair opportunity to litigate the issue in the prior proceeding.  *Union Ins. Co. v. Hottenstien*, 83 P.3d 1196, 1202 (Colo. App. 2003); *Reid v. Pyle*, 51 P.3d 1064, 1069 (Colo. App. 2002).  The second and third elements are undoubtedly satisfied in this case, as Rome was a party to the

---

[4]The Court notes, however, that the Defendants were aware of, and expressly noted, the defect in the Judgment at the time they filed it.  *Docket* # 84.  At that point, it was incumbent upon the Defendants to revisit the arguments they had previously raised in their motion for summary judgment and, if necessary, to withdraw or reframe those arguments that were affected by the criminal court's error.

8

criminal action and the convictions have been reduced to a final[5] judgment. Rome contends that Felkins and Romero's use of excessive force was not an issue that was actually decided by the jury.

As relevant here, Rome was ultimately charged with two separate classes of criminal conduct: Second Degree Assault (or Assault on a Peace Officer) in violation of C.R.S § 18-3-203(1)©, and Resisting Arrest in violation of C.R.S. § 18-8-103(1). Second Degree Assault occurs when a person "with intent to prevent . . . a peace officer from performing a lawful duty, . . . intentionally causes bodily injury to any person." Importantly, this crime consists of one *mens rea* element – the accused must intend that his conduct prevent a peace officer from performing a lawful duty – and one *actus reus* element– that the accused actually cause bodily injury to a person. *See People v. Stafford*, 890 P.2d 244, 247 (Colo. App. 1994). The crime of Resisting Arrest occurs when a person "knowingly prevents or attempts to prevent a police officer . . . from effecting an arrest." Whether the arrest being attempted is lawful or unlawful is irrelevant. *People v. Fuller*, 781 P.2d 647, 650 (Colo. 1989).

Under either crime, if the accused has evidence to suggest that the arrest was accompanied by the use of excessive physical force, the accused may raise the statutory affirmative defense of self-defense. *People v. Whatley*, 10 P.3d 688, 670 (Colo. App. 2000) (defense to Second Degree Assault if the accused "reasonably believed that unlawful force was about to be or was being used against him"); C.R.S. § 18-8-103(2) (in Resisting Arrest charge, police officer's "resorting to unreasonable or excessive force giv[es] rise to the right of self-defense"). C.R.S. § 18-1-704 provides that "a person is justified in using physical force upon another person in order to defend

---

[5]*See Docket* # 92 at 6-7 (pending appeal does not affect finality of judgment).

himself ... from what he reasonably believes to be the use or imminent use of unlawful physical force by that other person." Once the defense of self-defense is properly raised by an accused, the prosecution bears the ultimate burden to prove, beyond a reasonable doubt, that the accused was not acting in self-defense.[6]  C.R.S. § 18-1-407(2).

The Defendants argue that Rome's conviction of Second Degree Assault and Resisting Arrest collaterally estop him from claiming that his arrest was accomplished by the use of excessive force. However, when the elements of Second Degree Assault and the affirmative defense of self-defense are carefully parsed, it is clear that the jury's finding is not dispositive of the excessive force claim asserted in this case.

First, the Court observes, that the elements of Second Degree Assault do not require a jury to determine whether a peace officer in question was <u>actually</u> performing a lawful duty. The "lawful duty" reference is part of the *mens rea* element. It requires the jury to examine the accused's <u>belief</u> as to the lawfulness of the arrest in determining the accused's intent. Thus, the jury's conviction on Second Degree Assault necessarily includes a factual finding that Rome <u>believed</u> that Romero and Felkins were performing a lawful arrest of him, but not a finding as to whether their conduct was, in fact, lawful or not. Thus, Rome's conviction on charges of Second Degree Assault does not operate as collateral estoppel as to the issue of whether excessive force was used in the arrest.

Second, the defense of self-defense also focuses upon Rome's <u>belief</u>.  The defense of self-defense requires determination of whether the accused "<u>reasonably believed</u> that unlawful force

---

[6] Although self-defense is an "affirmative defense," this only means that an accused has an obligation to raise the issue and present some credible evidence supporting it, not to bear the burden of proving it.  C.R.S. § 18-1-401(1).

was about to be or was being used against him." *Whatley*, 10 P.3d at 670 (emphasis added). As with the *mens rea* element in Second Degree Assault, the defense of self-defense involves the accused's perception. Thus, the jury's rejection of this defense necessarily involved an assessment only of what Rome believed and whether it was reasonable. Nothing in this record reveals whether the jury rejected the defense based upon the conclusion that Rome did not actually believe he was being subjected to unlawful force, or whether the jury found that although Rome had such a belief, it was not reasonable under the circumstances. In either event, to reject the defense did not require the jury to determine whether excessive force was actually used.[7]

At the charging conference, Rome successfully argued to the criminal court that the jury should be given the opportunity to consider whether he should instead be convicted of Resisting Arrest, which he claimed was a lesser-included offense to the charge of Second Degree Assault.[8] *See Docket* # 97, Ex. A, Vol. II at 209, 221-22; Ex. A, Vol. III at 2-3. As discussed above, a person can commit the crime of Resisting Arrest even though the arrest being attempted is unlawful. *Fuller*, 781 P.2d at 650. The statute does contemplate that, if the accused comes forward with evidence that the force being used to effectuate the arrest was excessive, the accused is entitled to present the defense of self-defense to the jury. C.R.S. § 18-8-103(2). However, once again, the defense of self-defense requires the jury to determine whether Rome

---

[7]A finding that Rome's belief that Romero and Felkins were using excessive force was not reasonable comes closer to a finding the force used by them was permitted, but technically, such findings are not the same.

[8]The court did not find that Resisting Arrest was a lesser-included offense, but rather, a separate crime that Rome agreed to be charged with. *Docket* # 97, Ex. A, Vol. II at 222-23; *see also* Ex. A, Vol. III at 2-4. Rome, after consulting with his advisory counsel, acknowledged his understanding and desire to proceed nonetheless. *Id.* at Ex. A, Vol. III, 3-5.

11

"<u>reasonably believed</u>" he was being subjected to excessive force. It did not require the jury to decide whether Romero and Felkins used excessive force.

The § 1983 claim here concerns whether the Defendants actually used excessive force, rather than Rome's belief about lawfulness of the arrest or the force used. Because the factual issues in the criminal case and in this case are not identical the doctrine of collateral estoppel does not apply. Thus, the doctrine of collateral estoppel does not entitle Defendants to summary judgment on Rome's excessive force claim.

The Defendants alternatively argue that they are entitled to summary judgment based upon *Heck*. In summary, *Heck* provides that where a person convicted of a criminal offense asserts § 1983 claims based on "actions whose unlawfulness would render [the] conviction or sentence invalid," the person must first obtain relief that effectively nullifies the underlying conviction. 512 U.S. at 486-87. To evaluate a *Heck* claim, the Court must "consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence." *Id.* at 487. If so, the case must be dismissed unless the conviction has already been invalidated; if not, the case may proceed. *Id.*

For the reasons stated above, *Heck* does not bar Rome from proceeding on his excessive force claim. As noted, the issues in this proceeding and the prior criminal case are different. Proof that Felkins and Romero <u>actually</u> used excessive force against Rome does not implicate either the convictions for Second Degree Assault nor the convictions for Resisting Arrest because both sets of charges turn, at most, on Rome's <u>belief</u> as to whether the force used against him was excessive. Thus, a verdict in Rome's favor in this action would not impugn the validity of Rome's convictions.

      2. <u>Claims against Defendant Whittenberg</u>

Defendant Whittenberg also seeks reconsideration of the Court's denial of summary judgment on the claims asserted against him, contending that the Court misread the record. The Court has reviewed the entirety of Rome's response to the Defendants' motion for summary judgment and finds that Defendant Whittenberg is correct. Nowhere in Rome's response does he mention Defendant Whittenberg, much less allege facts sufficient to impose liability for excessive force against Defendant Whittenberg. Upon reconsideration, the Court grants summary judgment to Defendant Whittenberg on the excessive force claim, the only claim asserted against him.

**C. Plaintiff's Motion to Amend Judgment**

As the mirror image of the Defendants' motion, Rome's Motion to Amend Judgment seeks reconsideration of the Court's Order granting of summary judgment to the Defendants on the false arrest claim. Such Order granted summary judgment based upon the doctrine of collateral estoppel – in particular, that the criminal court, after affording Rome a full and fair opportunity to address the issue, made a factual determination that there was probable cause to support his arrest. Rome points to the transcript of the hearing on this issue, arguing that the criminal court found probable cause to exist at the point Rome exited his car and swung at one of the Defendants. Rome now appears to contend that the actions of the Defendants prior to that moment– drawing weapons and kicking in the car's window– independently constituted an arrest without probable cause.

Ordinarily, the Court would decline to consider this argument as untimely because the trial transcript upon which it is based existed when Rome originally responded to the Defendants' summary judgment motion. Therefore the argument could have been asserted previously, and is not a proper basis for seeking reconsideration. However, in light of Rome's *pro se* status and the lack of precision in his initial briefing, the Court reconsiders its prior ruling on this issue in order to ensure that it has not misapprehended the facts.

On December 8, 2003, the criminal court heard a motion by Rome that challenged the sufficiency of the grounds for his arrest.[9] The criminal court heard testimony from both Romero and Felkins, and there is no allegation by Rome that he was deprived of an opportunity to cross-examine them. At the conclusion of the hearing, the criminal court made several findings of fact and conclusions of law. It found that, upon arriving at the scene, Romero and Felkins received a description of a suspect. At the time Defendant Felkins observed Rome in his car in the adjacent parking lot, "the Court would find that based upon the information given to the police officers they had a reasonable articulable suspicion to at least contact and detain the suspect for further questioning." *Docket* # 100, Ex. A at 55. The court went on to find that Felkins attempted to detain Rome for questioning, but Rome accelerated and attempted to leave the scene. *Id.* at 55-56. After Rome crashed his car into a pole, Romero obstructed Rome's movement and again ordered him out of the car. *Id.* at 56. Rome refused the instruction, and attempted to move the car, at which point Romero kicked in the window. *Id.* at 57. At that point, Rome complied with the officers' instructions to exit the car, only to immediately become involved in a physical

---

[9]The record does not reveal the precise context in which the issue was raised, but the criminal court eventually announced that it was denying "the [Plaintiff]'s motion to suppress or to dismiss charges based upon unlawful police conduct." *Docket* # 100, Ex. A at 58.

14

altercation with Felkins. The criminal court found that, "certainly at the point the defendant exited the patrol (sic) car and rushed at the officers and swung at the police officer, they certainly had probable cause at that point to arrest him for assault on a police officer." *Id.* at 57. The court concluded, "so the court would find that <u>each action</u> of the police officers <u>from the initial attempt</u> to temporarily detaining (sic) the suspect and questioning him on an investigatory stop <u>to the point of arrest was justified</u>." *Id.* at 57-58 (emphasis added).

Rome's argument appears to arise from confusion with regard to the legal distinction between an investigatory stop – the so-called *Terry* stop – and an actual arrest. A police officer is permitted to make a lawful *Terry* stop when he has reasonable suspicion that the person stopped is engaging in criminal activity. *U.S. v. Dennison*, 410 F.3d 1203, 1207 (10th Cir. 2005). "Reasonable suspicion" merely requires that the police officer have a particularized and objective basis for believing that the individual is involved in criminal activity. *U.S. v. Johnson*, 364 F.3d 1185, 1194 (10th Cir. 2005). It is a quantum of proof that lies somewhere below the "probable cause" standard necessary to justify an arrest, and can exist even where the totality of the circumstances indicate that it is more likely than not that the individual is not involved in any illegal conduct. *Id.* Once a police officer has sufficient cause to institute a *Terry* stop, he is permitted to resort to the use of reasonable force to effectuate the stop, including displaying a weapon or using handcuffs to immobilize the subject, should the circumstances reasonably justify. *Mick v. Brewer*, 76 F.3d 1127, 1135 (10th Cir. 1996), *quoting U.S. v. Merkley,* 988 F.2d 1062, 1063 (10th Cir. 1993); *U.S. v. Melendez-Garcia*, 28 F.3d 1046, 1052 (10th Cir. 1994).

The criminal court found that the Defendants had reasonable suspicion to detain Rome from the very beginning of the incident. Specifically, it found that, based on the information that

had been supplied to him by the witnesses, Felkins "had a reasonable articulable suspicion to at least contact and detain [Rome]" from the moment they first observed him. *Docket # 100, Ex. A at 55.* Thus, from the very inception of the contact with Rome, the Defendants were lawfully entitled to conduct a *Terry* stop and detain him temporarily, so as to further investigate their suspicions. The criminal court went on to find that, at each stage of escalation, the Defendants continued to have sufficient cause to either continue to attempt to detain Rome under *Terry*, or, once Rome exited his car and assaulted Felkins, to actually arrest Rome with probable cause.

Reading Rome's pleadings liberally, this Court understands him to make two arguments. First, he contends that the incident escalated from a *Terry* stop to an arrest without probable cause at the time the car hit the concrete pole. Second, he contends that the incident became an arrest when Defendant Romero kicked out the driver's side window.

The Court need not belabor the first argument. Although Rome insists that Defendant Romero used his police cruiser to force Rome into the pole, this Court is bound by the factual findings of the criminal court on this point. The issue raised here – whether the police unlawfully seized Rome without sufficient legal justification by running his car into the pole – is a factual issue that was presented to and finally determined by the criminal court. There is no dispute that Rome was afforded a full and fair opportunity to contest and present evidence at the suppression hearing. The criminal court's factual finding that "[Rome] accelerated and crashed into a pole" and conclusion that no violation of his 4th Amendment rights occurred are binding by application of the doctrine of collateral estoppel.

With regard to the second argument, escalation of force during a *Terry* stop can, if unreasonable, convert that stop into an arrest for which probable cause is necessary. *U.S. v.*

16

*Perdue*, 8 F.3d 1455, 1462 (10th Cir. 1993).  Here, the record indicates that once Rome's car crashed into the pole, the Defendants approached the car with their weapons drawn, and after Rome failed to respond and attempted to restart his car, Defendant Romero kicked in the driver's side window and attempted to remove the keys from the ignition.  Police officers may draw their weapons during a *Terry* stop if they reasonably believe that doing so is necessary for their protection.  *Purdue*, 8 F.3d at 1462.  Moreover, they may, if necessary to neutralize a potential danger, order a suspect out of a vehicle and onto the ground.  *Id.*  According to the record before the criminal court, Rome refused to obey Defendant Felkins' order to stop, and had instead accelerated in the vehicle. After crashing into the pole, Rome continued to try to restart and move the car.  Under these circumstances, the officers standing by the doors of the car could reasonably believe that Rome posed a threat to their safety.  Thus, the Defendants' use of force to immobilize Rome and his car were not so unreasonable as to convert the *Terry* stop into a full-fledged arrest.  In any event, Rome is barred by collateral estoppel from asserting this argument as well, in light of the criminal court's findings that "each action" of the police officers, throughout the incident, was justified.  Romero's kicking in of the window is necessarily subsumed within that finding by the criminal court.

For the reasons stated above, after giving generous latitude to the interpretation of Rome's argument and a full review of the criminal court record that has been submitted, this Court has reconsidered its findings that the Defendants are entitled to summary judgment on Rome's false arrest claims, but upon reconsideration, finds that summary judgment was properly entered against Rome on these claims.

### D. Plaintiff's Motions for Summary Judgment

Rome has filed two new Motions for Summary Judgment, one seeking summary judgment in his favor on the false arrest claim, and one seeking judgment on the excessive force claim, particularly with regard to the Defendants' use of force against him during the encounter in the parking lot.

Both motions are summarily denied. The deadline for making dispositive motions **(# 39)** has long since passed, and Rome does not present any justification warranting relief from that deadline. Were the Court were to consider Rome's motions on their merits, the request for summary judgment of the false arrest claim would be denied based on the foregoing discussion and analysis. Plaintiff's request for summary judgment with regard to the excessive force claim, as it related to the incident in the parking lot, would also likely be denied. Taking the facts in the light most favorably to the Defendants, as the Court must on a motion for summary judgment by Rome, the record reflects that Rome drove into a concrete post, then continued to attempt to maneuver his car out of the parking lot, despite having the Defendants standing on both sides of the car instructing him to stop. Whether kicking in Rome's window constitutes excessive force in these circumstances is, at least, a question for the jury.[10]

---

[10] The Court is also mindful of the remarkable similarity between the Defendants' version of the events in the parking lot and the facts of *Brosseau v. Haugen*, 543 U.S. 194, 196-97 (2004), in which the Supreme Court found that the police officer involved in drawing a weapon, breaking the suspect's car window, and eventually shooting the suspect was entitled to qualified immunity.

### E. Motion to Extend Trial

Rome moves to extend the trial from the 3 days to 10 days. The Court denies this motion as premature, and will address the issue of how much trial time is needed based on the parties' submissions prior to the Final Trial Preparation Conference.

## CONCLUSION

For the foregoing reasons, the Defendants' Motion to Amend **(# 97)** is **GRANTED IN PART**, insofar as the Court has reconsidered its March 31, 2005 Order and, upon reconsideration, grants summary judgment to Defendant Whittenberg on all claims asserted against him, and **DENIED IN PART**, insofar as the Court grants no additional relief upon reconsideration. The caption of this case shall be amended to omit reference to Defendant Whittenberg. Rome's Motion to Alter Judgment **(# 100)** is **GRANTED IN PART**, insofar as the Court has reconsidered its grant of summary judgment to the Defendants on the false arrest claims, but **DENIED IN PART**, insofar as the Court declines to modify its prior judgment on those claims. The Defendants' Motion to Strike **(# 105)** is **DENIED AS MOOT**. Rome's Motion to Supplement **(# 145)** is **GRANTED**. Rome's Motions for Summary Judgment **(# 147, 154)** are **DENIED**. Rome's Motion for Extension of Trial Time **(# 177)** is **DENIED** without prejudice as premature. The Clerk of the Court shall terminate **Docket # 149** and **155**, as these filings are not proper motions.

Dated this 10th day of February, 2006.

**BY THE COURT:**

_____

Marcia S. Krieger
United States District Judge

20